## Case No. 11,783.

### RICHARDSON v. HICKS.

[1 MacA. Pat. Cas. 335.]

Circuit Court, District of Columbia. Sept., 1854.

PATENT OFFICE APPEALS — INTERFERENCE — EXAMINER'S EXPLANATIONS — APPLICANT'S DECLARATIONS AND DESCRIPTIONS.

[1. The provision of the act of 1839, § 11 (5 Stat. 354), authorizing the commissioner or examiners to be interrogated before the judge in explanation of the principles of the machine, includes authority to require such clear and full explanations as to enable the judge to duly weigh and apply the evidence. Therefore, on a question of priority of invention, a hypothetical question may be put embodying a description which, it has been testified, one of the parties at a certain time gave of his device, and the examiner may be required to state whether, from such description, the device as now claimed could have been made by a third person.]

[2. It is doubtful whether, on the question of priority, conversations and declarations by one of the parties, describing a device of which he had already constructed a specimen or model, are admissible in evidence, when such model is not produced or its non-production accounted for.]

[3. It is certain, however, that it is not allowable to show, to a witness testifying to such conversations and declarations, a model which is not claimed to be the one the inventor had then constructed, and allow him to testify that it corresponds to the description given, and that he could have made it from such description.]

[This was an appeal by John Richardson from a decision of the commissioner of patents, in interference, awarding priority to William S. Hicks, in respect to an invention relating to pen, and pen and pencil, cases.]

C. H. Watson, for appellant.
Examiner Peale, for commissioner.

MORSELL, Circuit Judge. William S. Hicks' application and specification were filed on the 3d of June, 1853. He says: "I do not claim a case for both pen and pencil, irrespective of the construction and arrangement of the several parts, for cases have been previously invented for both pen and pencil; but having described my invention, what I claim as new, and desire to secure by letters-patent, is the peculiar construction and arrangement of the several parts, as herein described, viz., having the pencil-slide C fitted within a case B, which is inclosed in a larger case A, the smaller case B being secured to the side of the case A, and having the pen-slide D fitted in the space between said cases A and B, two longitudinal slots a' a' being made through the case at opposite points, and connected at their upper ends by a cross-slot b, by which the pin e of the sliding-band d may be moved in either of the slots a', and be made to operate upon either the pen or pencil slide, as described."

On the 20th of October, in the same year, John Richardson filed his application for a patent for an improvement in pen and pencil cases. His claim as it originally stood is stated thus: "Having thus described my improvements, what I claim therein as new, and desire to secure by letters-patent, is the operating sleeve, or the equivalent thereof, having a turning as well as sliding movement, in combination with the pen and pencil holders and the interior stock or barrel, whereby the pen or pencil can be protruded and retracted at will, substantially as herein described. I also claim locking and unlocking the pencil in such manner that whilst one is locked in its retracted position the other is left free to be protruded and retracted at will, as described, or both can be simultaneously locked, and thus be protected from injury when not in use."

This claim became afterwards modified as it now appears, and with the last clause of the claim altogether stricken out. There is nothing in the papers to show that these modifications and amendments were not received absolutely, but de bene esse; and so the acting commissioner states. He says: "The reasons for the decision will be found in the opinion filed March 11, 1854, a copy of which is herewith inclosed. The question of the propriety of interference was not made."

On the 25th of November, 1853, the commissioner addressed a note to Hicks, stating that "there is an application for letters-patent before the office for alleged improvements in the construction of pen and pencil cases. The devices are equivalents for yours rejected on the 26th of September last, but now considered to be patentable. If you desire the opportunity to prove priority of invention, an interference will be declared in accordance with the rules contained in the thirteenth section of the inclosed circular." In reply to which, on the 30th of November aforesaid, Hicks notified the commissioner of his desire to have the opportunity to prove his priority of invention; and accordingly, on the 2d of December then next, an interference was declared for the trial of the issue so made by the declaration of interference at the time appointed. The parties duly procured their testimony, and submitted the same to the commissioner for his decision, who, on the 11th day of March, 1854, awarded priority of invention to the said William S. Hicks. In his opinion the commissioner states a summary of the important facts to be: First. That Hicks made his invention in 1845, so far as to have completed his design sufficiently to explain it fully to one of the witnesses. The witness states that he could have made the article from the description thus given him. He further states that Hicks told him he had made a pencil after that plan; but that fact

the commissioner says he does not consider as sufficiently proved. He therefore concludes that Hicks had then fully conceived and matured the plan, but that there was no sufficient evidence that he had made a pencil in accordance with it. Second. That "Richardson, on the other hand, made the invention in 1847, completing his plan by actually constructing the article invented." Again he says: "Had Mr. Richardson upon making his invention applied at once or within a reasonable time for a patent, I should have no hesitation in awarding to him priority against Hicks' application." He says: "The fifteenth section of the act of 1836 would have justified such a course against one who was not 'using reasonable diligence in adopting and perfecting his invention;' but Hicks' application was made more than four months prior to Richardson's, and the latter does not seem, since making his invention, to have been taking any steps to perfect or bring it into use. I saw no reason, therefore, for giving him a preference on account of the laches of Hicks. Both seem on nearly the same footing in this respect."

The commissioner then states the principle of law which he thinks applies to the evidence. He says: ."It has sometimes been broadly laid down that the first inventor who has put his invention in practice, and he only, is entitled to a patent. But the decisions do not justify such a proposition. See the case of Heath v. Hildreth [Case No. 6,309], decided by Judge Cranch on appeal in 1841. It is not even necessary that a model or drawing should be made in order to give date to the period of invention. See Curt. Pat. 542–544. Priority in that case was awarded to the person who had described his invention nine years previous to the decision, and no model or drawing seems ever to have been made." The commissioner concludes by saying: "I am therefore of the opinion that priority should be awarded to Hicks." From which decision this appeal was prosecuted by Richardson.

The first reason is a general one, because it is not proved that Hicks invented the case which he claims until the year 1853; and it was clearly proved that Richardson had invented the case in the year 1847. Second. In refusing to grant a patent to said Richardson as claimed because his claim as stated does not embrace Hicks' case, although his invention comprehends Hicks' among other things, and he might have made, and still may of right make, a claim to cover Hicks' case in addition to the claim now pending. Third. Because the testimony of the witness supposed to prove the fact that Hicks made the invention he now claims in 1845 shows conclusively that the case explained to him by Hicks was a totally different thing from that now described by him. Fourth. In deciding that Richardson, since making his invention in 1847, has not been taking any steps to perfect it, when it appears from the testimony

that he has been unremitting in his efforts to improve upon his original invention. Fifth. In deciding that in a case of interference reported in Curt. Pat. pp. 542–544, priority of invention was awarded nine years previous to the decision, and no model or drawing seems ever to have been made; therefore, that priority should be awarded to Hicks, as both the report and record show that both the parties to the interference made a model or a full-sized machine, or both.

The commissioner has laid before the judge, together with his opinion in writing, all the original papers and evidence in the cause, and on the day appointed for said hearing, as previously stated, duly notified all the parties interested. Mr. Peale, the examiner on behalf of the office, and Mr. Watson, on behalf of the appellant, appeared. At which time, on the application of said appellant (Mr. Watson), leave was given to him to examine, on oath, the said officer appearing for the office, in explanation of the principles of the pen and pencil case, the subject of the controversy between the parties in this case. This was done according to the established practice in like cases before this tribunal.

(The testimony of the examiner in full follows, and is omitted, except the eleventh question and answer.) "Eleventh. If in attempting to describe this pen and pencil case it was stated that 'the inner side brass barrel or tube was similar to the double-slide case that was soldered to another brass barrel that had two slits in, with a brass one to connect the two; then came the three silver tubes, one fitting over the other; the middle silver tube had a pen through the upper end of the second silver tube, through into the inner surface; the second silver tube drawed the pencil or pen-holder out by way of lock; there are two slits in only one of the brass barrels, that is, the larger one'—please say whether or not the pen and pencil case now claimed by Hicks could be constructed from the description this statement contains. Answer. It is my opinion it could not."

The first thing which claims attention is found in the argument of the appellee's counsel, which is his objection to the eleventh interrogatory put to the examiner by the counsel for the appellant and his answer thereto, as hereinbefore stated, as unauthorized by the provisions of the statute of the 3d March, 1839, § 11, which says: "And at the request of any party interested, or at the desire of the judge, the commissioner and the examiners in the patent office may be examined, under oath, in explanation of the principles of the machine or other thing for which a patent in such case is prayed for," as understood with the immediately previous part of the same section, which directs the commissioner to lay before the said judge "all the original papers and evidence in the case, together with the grounds

of his decision, fully set forth in writing, touching all the points involved by the reasons of appeal, to which the revision shall be confined."

In addition to what has been said on a former occasion, it may be sufficient briefly to reply that this part of the act of 1839 must be considered in connection with a somewhat similar provision contained in the law, which made it the duty of a board of examiners to hear and determine appeals from the decisions of the commissioner.

The language of the statute has been correctly quoted, but too literally construed. It must surely mean that the explanations which it authorizes to be required of the commissioner and examiners may be so full and clear an explanation of the principles as to enable the judge duly to apply and weigh the evidence offered to support the issue in the case, and not to be limited to a mere exposition of the terms used. And such explanations, so given, the judge is bound to respect as part of the case. It is proper, no doubt, that the judge should form his own conclusions. With these remarks, I shall proceed to the further consideration of the case.

The points substantially involved in the reasons of appeal are: First, as to the admissibility of the testimony to prove the priority of the invention in the said Hicks of the pen and pencil case as described in his specification; secondly, if admissible, the invention proved is totally different from that claimed for the appellant.

I shall be obliged to take a particular notice of the testimony. Mitchell, the principal witness on the part of the appellee, is asked whether Hicks has at any time, and if so, when, while witness and he were at work together, explained to witness a pen and pencil case. The answer is, that he did in December, 1845. He is requested to state what was the form of construction of the case which Mr. Hicks then and there described to him. He answers that he was told in the first place that there was a small brass tube soldered similar to the double-slide case. He says this is what Hicks told him. The pin was in the inner surface of the second silver tube. He is asked what the two slits were for. He answers they were to pass the pin through to draw out the pen or pencil. The cross-slit was to exchange from the one to the other. The next interrogatory desires witness to look at the model, Exhibit G, and to state how it corresponded with the pen and pencil case which he had stated that Mr. Hicks described to him in December, 1845. His answer is, "It is the same." His answer to the ninth interrogatory is, "that Hicks so described the pen and pencil case that he could have constructed it from the description which he gave him of it." To the tenth interrogatory he answers that there was no portion of that pen or pencil case which he

did not well understand after Hicks gave him the description which he has stated. To the thirteenth interrogatory he says Hicks stated at that time that he was the inventor of that pen and pencil case. To the fourteenth interrogatory Hicks said that he should apply for a patent at some time or other. To the fifteenth interrogatory "he stated no reason why he did not apply for a patent immediately." The sixteenth interrogatory is, "State whether or not he told you at the time he gave you the explanation whether he had already made such a pen and pencil case as he then described to you." The answer is, "He told me he had one made at that time." In answer to the seventeenth interrogatory witness says: "He said it was at his house. They were at work in the same shop." To the nineteenth interrogatory he answers that "Hicks explained to him no other advantages than that both pen and pencil-holder came out at the same end." To the twentieth interrogatory witness says: "By the middle barrel by pushing it down, which had a lock or pin." To the twenty-first interrogatory, that "Hicks told him that the lock or pin was placed at the upper end of the middle silver barrel in the inside surface, and told him that the two slits in the brass tube were for the pen to pass through and drive the pencil or pen-holder out." To the twenty-third interrogatory, "that the use of the cross-slit was to turn from one slit to the other; the middle barrel was to be turned." In answer to a cross-interrogatory he says he thinks Hicks applied for a patent in respect to another improvement in pen or pencil cases in 1850. In answer to forty-first cross interrogatory he says: "For an improvement in the lead-chamber." Witness also says that he was near Hicks' house; that he has been in it so many times he could not tell exactly when; he visited Hicks from 1843 to the time of taking the deposition. He says Hicks commenced the conversation by telling him (the witness) that he had a case for which he intended to apply for a patent at some time or other; that he neither showed him the case nor made any drawing of it at that time. To the sixty-second cross-interrogatory—"In explaining it to you, state particularly what he (Hicks) said and all that he said?"—witness answers: "The inner side small brass barrel was similar to the double slide-case that was soldered to another brass barrel. They had two slits in with a cross one to connect the two; then came the three silver tubes, one fitting over the other; the middle silver tube had a pin through the upper end of the second silver tube through into the inner surface; the second silver tube drew the pencil or pen-holder out by way of lock. That is all that I recollect now that he said." In answer to an interrogatory direct he explains a former answer by saying "there are two slits in only one of them, (the brass barrels,) that is, the large one."

Francis Deacon, another witness on the part of Hicks, to the sixth interrogatory answers that Hicks did state, some time during the winter of 1845 and 1846, before the spring of 1846, and he thinks soon after he went there, that he had made a new case that he considered a good one; that he meant to keep it for his own benefit, or words to that effect. He did not describe or show the case to him.

Philip Millspaugh, another witness on behalf of Hicks, to an interrogatory put by Hicks' counsel, says that Jonas Wood (deceased) told him that Hicks said to him that he had a good invention of a pen and pencil case. He gave no particulars. To another by same he answers: "Exhibit G, or one that resembled it and worked like it, was shown to him by Hicks about six or eight months ago (September, 1853). Hicks said he had or was about to apply for a patent for it."

The aforegoing testimony was objected to by the counsel for Richardson as inadmissible, on the ground that the conversations and declarations of said Hicks, so offered in evidence, referred to a pen and pencil which had been made by him and was in his possession, and which was not produced or the non-production accounted for, according to the rule of evidence that the best evidence which the nature of the case admits of must be produced.

It appears, from the reasons stated by the commissioner in his opinion, that the evidence was admissible and sufficient, except as to the part of it relating to his making the pencil, which he did not consider as sufficient for that purpose, as I have before stated. The proof on both sides and the arguments with the authorities referred to have been examined and considered, and I have endeavored to draw from them the proper principles which ought to govern in this case.

The testimony offered in support of the issue on the part of Hicks consists, principally, of his own conversations and declarations, to be used in chief, and not made even on oath. Every one is familiar with the rule that upon general principles the declarations and conversations of a plaintiff are not admissible evidence in favor of his own rights. The reasonableness of the rule has never been questioned. This, however, is one of a class of cases forming an exception to the general rule, justified upon the ground of necessity, which arises from a general presumption growing out of the nature of the case and its peculiar circumstances, and where, "in the ordinary course of human affairs, there would be a defect of evidence and a failure of justice unless such evidence be admitted." Such declarations should be free from suspicion and accompanied by acts forming the res gestæ, to which the credit is to be given, and not to the declarant. Every proper limitation and caution should be used to prevent the exception from a greater departure from that most beneficial and fundamental general rule than is absolutely necessary. The principal authorities relied on to show the admissibility of the evidence are those of Philadelphia & T. R. Co. v. Stimpson, reported in 14 Pet. [39 U. S.] 462, decided by the supreme court, and the case of Heath v. Hildreth [Case No. 6,-309], decided by Judge Cranch. In this latter case the point was not raised by any particular objection; the principle settled by that case was as to what was meant by the expression, "reduced to practice;" that this did not import bringing the invention into use; that "when applied to an invention it generally means the reducing it into such form that it may be used so as not to be a mere theory." In that case a model had been made according to the specification. The judge says: "The thing was done, the invention was reduced to practice;" and so in the case of Cochrane v. Waterman [Id. 2,929], the depositions were taken in the presence of Mr. Cochrane, and no objection made. The case, also, of Cundell v. Parkhurst [Id. 3,477], was cited to show that the date of the invention was fixed without proof of a machine or model. I do not think the facts are correctly stated. The conversation was about the draft of a machine, both of which were seen by the witness at the time. Judge Cranch says: "The only point involved in the reasons of appeal is the date of the conversation between Ziba Parkhurst and Joseph C. Johnson, in which the former showed the latter a drawing, similar to Exhibit D, of a machine called a stripper or guard, to be applied to burring machines. Mr. Johnson thinks it was the latter part of the spring of 1848, but says he cannot name dates. He fixes the date, however, by recollection of another fact, to wit, that in May, 1845, Ziba Parkhurst went out to Erie county, Pennsylvania, and Ohio, and bought some fifty or sixty thousand pounds wool, and drew upon Johnson's house for it, who sold it on commission for him, and that is his reason for knowing the time; and that he saw the machine before Ziba left for Erie county of Pennsylvania." Now, it is true this last circumstance enables him to fix on the particular time; but at that time he not only heard the conversation but was also shown the draft and machine, and such was the very proof of the invention and date. I think, therefore, it warrants the converse of the proposition.

The next case referred to is the decision of the supreme court, in 14 Pet. [39 U. S.] 462, between the Philadelphia & Trenton Railroad Company and Stimpson. In order to understand correctly the opinion of the court, it will be proper to state what the case was. It was brought to recover damages for the violation of a patent by the defendant after the plaintiff had given prima-facie evidence of his patent-right. The de-

fendant set up the defense that prior to the time stated in the patent the invention had been reduced into use and practice by others, and offered proof to that effect. By way of rebutting proof the plaintiff offered to give evidence by witnesses of the conversations of the patentee on the subject of his invention at an anterior period, which conversations were intended to show the making of the invention by the patentee before, and at the period when, the same took place. The declarations did not stand alone; they were accompanied by two drawings and a model. The evidence was not original, but designed to meet a collateral issue as to the period of invention. The character of the evidence was the same with that which had been offered on the part of the defendant. The expressions used by the judge must be limited to the case before him. In this way only is the legal import of the court's decision to be known. The judge states the general rule and that applicable to the present case as an exception, and as one of the peculiar class of cases which I have before alluded to. The cases stated by the judge for illustration are those in which the declarations form a part of the res gestæ, and under circumstances existing at the time, and to which the credit is confined, for he says "the conversations and declarations of a patentee affirming that at some former period he invented that particular machine, might well be objected to." So with respect to the principle of necessity, he says: "The invention itself is an intellectual process or operation; and like all other expressions of thought, can in many cases scarcely be made known except by speech. The invention may be consummated and perfect, and may be susceptible of complete description in words a month or even a year before it can be embodied in any visible form, machine, or composition of matter. It might take a year to construct a steamboat after the inventor had completely mastered all the details of his invention, and had fully explained them to all the various artisans whom he might employ to construct the different parts of the machinery; and yet, from those very details and explanations, another ingenious mechanic might be able to construct the whole apparatus and assume to himself the priority of the invention." Again he says: "His conversations and declarations stating that he had made an invention, and describing its details and explaining its operation, are properly to be deemed an assertion of his right at that time as an inventor to the extent of the facts and details which he then makes known, although not of their existence, at an antecedent period of time. In short, such conversations and declarations, coupled with a description of the nature and objects of the invention, are to be deemed a part of the res gestæ, and legitimate evidence that the invention was then known to and claimed by

him, and thus its origin may be fixed at least as early as that period." Now, the case before the commissioner was that of conversations and declarations, not of an invention to be embodied, of a machine directed to be made accordingly, but relating exclusively to a pen and pencil which had then been made and perfected. They related entirely to that as the ultimate fact, and not one word is expressly said about an unexecuted plan of an invention. This machine was the thing—the perfected thing—including all that the conversations and declarations meant. It was not produced, nor was its non-production accounted for. Can this be considered as immaterial in the application of the rule stated in the case just alluded to? Can the evidence so leading to the proof of its principal object—the making of the machine—be so separated and restricted as to be admissible to prove the invention unexecuted, and not so to show that it was made and perfected? These propositions embrace the objections stated in the third reason of appeal.

To support this position he relies on the rule that the best evidence which the nature of the case admits of ought to be produced, as before mentioned; and he refers to a case decided by Judge Woodbury,—Allen v. Blunt [Case No. 217],—in which case the judge expresses himself in this language: "Another question thus arose, and was decided by the court, whether the defendant had offered to the court, not the jury, satisfactory proof to justify it in point of law in the admission of parol evidence to the jury of the contents of that letter and drawings. Nothing had been offered to the jury to weigh on this point, and nothing could be by law, except the original letter itself and the drawings, until proof was furnished to the court that they had been lost or had gone into the plaintiff's custody." And the judge says nobody testified to these last facts. This ruling, the judge says, rests on the familiar principle that a resort will not as a general rule be allowed to parol or secondary evidence of a fact when written or higher evidence exists and may be obtained.

On the other side it is contended that the rule is not applicable to this case; that the machine, not produced, is neither written nor higher evidence; and this, in a technical sense, I incline to think is true, because it is not to be understood that this rule requires the strongest possible assurance of the matter in question. But it may not be improper, though somewhat in anticipation, to state, in this connection, the rule that no evidence of a nature merely substitutionary shall be received when the original or primary evidence is producible; that mere inference or presumption will not be allowed to be acted upon which may mislead, when it is in the power of the party to supply certainty of the fact by express original evidence. To illustrate the idea by an example put in one of

the books: "Here is a person who can tell you to an absolute certainty the fact as to the delivery, but I will not call him, and yet I will desire you to presume a personal and open delivery to him."

This rule applies emphatically to the next part of the evidence to be considered, to which the same objection on the ground of inadmissibility was made, and that was the question and answers respecting the Exhibit G. The witness is directed to look at said model of a pen and pencil case, and state how that corresponds with the pen and pencil case which he had stated Hicks described to him in December, 1845. He answered: "It is the same." To the next interrogatory, which asks him to state whether or not Mr. Hicks then so described that pen and pencil case that witness could have constructed it from the description which he gave him, he answers he did. The next interrogatory is, "Whether or not there was any portion of that pen and pencil case which witness did not well understand, after Mr. Hicks gave him the description which he had stated." His answer is, "No, sir; there was not."

It is not pretended that the model shown to him is the original model described in the conversations and declarations between him and Hicks. That was not produced, nor the pen and pencil described in the specification. He never saw the original, nor had he any personal knowledge of it; it would be, therefore, matter of opinion only. Witness is not an expert, and, if he was, he could not be called for the purpose of this point of evidence by a party who has the original and refuses to produce it. To admit such evidence would, in principle, be a violation of the rule that no evidence of a copy, though sworn to, is admissible until proof has been given that the original cannot be produced. For these reasons I think the objection ought to be sustained.

Having said so much with respect to the objections on the ground of the admissibility of the evidence, for the purpose of considering the effect of that part of the testimony first alluded to, let the admissibility be conceded, and that the conversations and declarations, if truly stated, formed a part of the res gestæ, and were not a mere substitution, but original evidence, though a selection of weaker for stronger proof, and legally capable of being separated to prove the invention, though not admissible for proving the machine,—to be brought within the rule as laid down by the judge, such conversations and declarations must state that he made the invention as stated in the specification, describing its details and explaining its operations in order to be deemed an assertion of his right, at that time, as an inventor to the extent of the facts and details which he then makes known.

On the part of the appellant, the reality of the transaction as stated is denied; and he has produced witnesses to prove the improbability that such an explanation did take place, and one who proved that in September, 1853, in a conversation which he had with Mr. Hicks, said Hicks told him that he had made his invention a year ago (1852); in addition to which are urged the attending circumstances as raising strong presumptions against the truth thereof—as his not having shown the pen and pencil to the witness whom he made his confidant at that or at any other time, although the witness was a constant visitor at his house, where he had it, before and long after the time of said explanations; the transient nature of the conversations and the lapse of time which had taken place before the witness was called on to state them; and also that while the pen and pencil had been made and perfected, he made no application for a patent for eight years. Nor is there any proof of his having during the interval used it, or shown it, or spoken of it to any one of those about the shop in which he worked, and without any apparent reason for this strange silence and inaction.

These circumstances, added to what the witnesses have said, certainly present strong conflicting evidence as the accuracy of the oral statement of the explanations of Hicks by Mitchell, the witness, and of the truth of the declarations, if so stated. Again, it is contended that if the testimony is admissible and true in fact, the pen and pencil so described is substantially different from that described and claimed in the specification as the invention of Hicks. To support this, in addition to the other evidence offered, the appellant relies on the explanations of the examiner made before the judge. What he said on that occasion has already been stated; and it will be found in substance to consist in stating what are the substantial and indispensable features in the plan or device of the pen and pencil case, as described and claimed by the specification of the appellee, upon a comparison of which with that described by the witness, Mitchell, as the declarations or explanations of Hicks, it will be found that there are a number of important deficiencies, as, for instance, in stating a less number of longitudinal slants; in the omissions to state the proportions, relative distances, and length of the parts; in failing sufficiently to state the peculiar device constituting the principle to produce the alternate pushing out of the pen whilst the pencil is retained, and in like manner of retaining the pen whilst the pencil is pushed out; there are also other important defects. This is the state of that part of the evidence. I have determined the other part respecting the Exhibit C to be inadmissible. The decision must, therefore, depend upon that part of the evidence.

The law, as before stated, as laid down by the court, is that the party's "conversations and declarations stating that he had made an invention, and describing its details and ex-

plaining its operations, are properly to be deemed an assertion of his right, at that time, as an inventor to the extent of the facts and details which he then makes known." The witness (as he states) might have been enabled to have made a pen and pencil case according to the description given, but I am not satisfied that he could have made from it the pen and pencil described in the specification.

The application of John Richardson, as before stated, was filed on the 20th of October, 1853. One of his witnesses testifies that he saw the pencil case in June, 1847. Others testify to seeing or working on the models of the pen and pencil cases in question at later periods during the year 1847, and that he was engaged diligently for years afterwards in endeavoring to make his pen and pencil case more perfect. His evidence proves beyond a doubt that he was the inventor as early as the above-stated period.

It will be observed that an effort has been made in this case to sustain the issue on the part of the appellee by his own declarations, and those made not even on oath. I have already stated what I consider the proper limits of that kind of testimony, and on this, as well as on every other occasion which requires it, I shall feel myself bound by the same principles. This I think will be necessary as a guard against the great evil which would grow out of a departure from that most beneficial and fundamental rule which excludes a party from giving evidence in his own cause.

In conclusion, from what has been said I am of opinion, and do so decide, that the commissioner erred in determining, on the issue of this case, that the said William S. Hicks was the prior inventor of the pen and pencil case, and that he was entitled to a patent therefor; on the contrary, I think, and do so decide, that the said John Richardson is the prior inventor of the pen and pencil case, as described in his specification, and that a patent issue to him accordingly.